PONTOW, Plaintiff in error, v. STATE, Defendant in error.

*No. State 29. Argued February 28, 1973.—Decided April 9, 1973.*
(Also reported in 205 N. W. 2d 775.)

136

For the plaintiff in error there were briefs and oral argument by *William R. Steinmetz* of Milwaukee.

For the defendant in error the cause was argued by *Michael R. Klos*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HEFFERNAN, J.   On March 23, 1971, Gary James Pontow pleaded guilty in the circuit court for Milwaukee county to the crime of burglary, in violation of sec. 943.10, Stats. The plea was accepted by the trial judge, and the defendant was sentenced to a term of imprisonment not to exceed ten years, with the sentence to run consecutively to another term which the defendant was serving.

The appeal is brought pursuant to sec. 971.31 (10), Stats., which provides:

"An order denying a motion to suppress evidence on a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

In the instant case the defendant gave a confession which implicated him not only in the burglary with which he was charged but in 17 other burglaries which were read into the record. He contends on this appeal that the confession was improperly induced and not voluntarily elicited. He claims that the plea of guilty came only because the trial court had improperly refused to suppress the confession. The defendant does not contend that any error occurred in the proceedings at which his plea of guilty was accepted. Accordingly, if we find that the confession was properly admitted into evidence, no other issues need be determined by this court.

We are satisfied that the trial judge properly ruled that the confession was admissible and that his denial of the motion to suppress was not error.

We said in *State v. Hunt* (1972), 53 Wis. 2d 734, 740, 193 N. W. 2d 858:

"The essential question, in determining the voluntariness of a confession, is whether the confession was coerced, or the product of improper pressures exercised by the police. To be admissible into evidence, a confession must be the voluntary product of a free and unconstrained will, reflecting deliberateness of choice." *See also: State v. Hoyt* (1964), 21 Wis. 2d 284, 294, 128 N. W. 2d 645.

The voluntariness of a confession is to be judged by examining all the facts surrounding the confession under the "totality-of-the-circumstances" test. *State v. Hunt, supra,* page 740; *State v. Carter* (1966), 33 Wis.

2d 80, 88, 146 N. W. 2d 466; *Fikes v. Alabama* (1957), 352 U. S. 191, 77 Sup. Ct. 281, 1 L. Ed. 2d 246.

In this case, the facts surrounding defendant's confession are contained in the undisputed testimony of the interrogating officers and of the assistant district attorney at the hearing on the motion to suppress the confession. This testimony reveals that upon his arrest defendant was given the prescribed *Miranda* warnings and that the warnings were repeated at subsequent stages of the questioning. It has been conceded that defendant voluntarily waived his right to have an attorney present during the questioning.

The testimony fails to reveal that defendant made any requests which were denied or that he was threatened or physically coerced. There is no evidence of the officers employing overbearing or oppressive inquisitorial techniques. Defendant's claim of involuntariness is predicated solely on the fact that he confessed to the burglaries only after he was given assurances that he would be charged with only one offense.

The totality of the circumstances here do not evidence any coercion nor support any inference that would lead to the conclusion that the confession was involuntary. It is true that only after he was promised by the district attorney that he would be charged with but one count did the defendant confess and agree that 17 other crimes of burglary could be read into the court proceedings. In order to vitiate this confession as being induced by the promise, he relies on *Bram v. United States* (1897), 168 U. S. 532, 542, 543, 18 Sup. Ct. 183, 42 L. Ed. 568, wherein appears the dictum:

" 'But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' "

*Bram* has been quoted with approval in the recent case of *Brady v. United States* (1970), 397 U. S. 742, 753, 90 Sup. Ct. 1463, 25 L. Ed. 2d 747. However, *Brady* recognizes that a promise of leniency will not in itself invalidate a confession and that other surrounding circumstances must be considered. *Brady* accepted the defendant's confession even though it was induced by the implied promise of a lesser penalty if he waived a jury trial which could have resulted in the imposition of a death penalty. The *Brady* court distinguished *Bram*, in which the defendant had been interrogated in a foreign country without counsel and while nude. In *Brady*, at page 754, the court stated in respect to *Bram:*

"In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess."

All other cases cited by the defendant reveal promises of leniency that were coupled with allegedly oppressive police conduct. The totality of those factors was found to have produced a coercive atmosphere. *See, State v. Hoyt* (1963), 21 Wis. 2d 310, 124 N. W. 2d 47, rehearing (1964), 21 Wis. 2d 284, 128 N. W. 2d 645; *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. 2d 513; *Lynumn v. Illinois* (1963), 372 U. S. 528, 83 Sup. Ct. 917, 9 L. Ed. 2d 922.

In the instant case, there is no evidence to show any coercive police practices, nor was the defendant interrogated for any considerable length of time. His statement that he was interrogated by three teams of detectives and held in custody overnight is technically correct but grossly misleading. The record shows that the first team of interrogators was concerned only with establishing his identity, since he had given an assumed

name when arrested. One of the officers involved in the initial questioning testified that he had known the defendant as a friend for several years and that their conversation had involved personal matters and questions about the health of the defendant's family. This interview lasted no more than twenty-five minutes. The second team of detectives questioned him on the following morning for only five minutes. It was stipulated that nothing occurred at either of these two sessions that was relevant to the suppression of the confession which resulted from the third session.

The confession ultimately obtained resulted from a series of relatively short interrogations. There is no evidence whatsoever that the defendant was detained for an unreasonable period of time or subjected to lengthy or harassing questioning. *See: Brown v. Allen* (1953), 344 U. S. 443, 73 Sup. Ct. 397, 97 L. Ed. 469; *Reimers v. State* (1966), 31 Wis. 2d 457, 143 N. W. 2d 525. The testimony relating to the final period of questioning shows that the defendant had much experience in the criminal process and initiated hard-headed, arm's-length bargaining with the police to attempt to gain favorable treatment. It is conceded that the defendant volunteered the information that he had been involved in numerous unspecified burglaries. He refused to elucidate on these other crimes on the ground that he had received a "bum" deal from the police on a previous occasion. He indicated that he would be willing to cooperate if he were assured of fair treatment. Contrary to the finding of the trial judge, it appears that the interrogating detective responded to this suggestion of the defendant by suggesting that perhaps all the crimes could be resolved by a plea of guilty to the single charge. The officer, however, testified that he immediately told the defendant that only the district attorney had authority to make any promises in regard to the charges that would be brought. Defendant had previously stated

he wanted to talk to someone in authority. Pontow was then taken before Assistant District Attorney Theodore J. Hodan. Hodan testified that the defendant initiated that conversation by suggesting that he be charged with only one offense in return for confessing to several others. The detective who was present at this interview in the district attorney's office testified that the defendant maintained the bargaining initiative throughout the conference and attempted to secure the assistant district attorney's agreement for a recommendation for concurrent sentences. Hodan, however, refused to accede to this request. Pontow insisted that the agreement be in writing. As the result of Pontow's insistence, the confession to the crime and to the 17 other burglaries not charged contains the statement that it was conditioned upon the district attorney's promise that only a single charge be brought.

Under this state of the evidence, there is no support for the defendant's contention that his confession was not the product of a voluntary exercise of his own will. Certainly, there is nothing in the "totality of the circumstances" to show coercion or any other factors that would lead us to conclude that the defendant's statement was even arguably involuntary.

The question remains, however, of whether it is improper under any circumstances for the police and prosecutor to engage in confession bargaining with an unrepresented defendant. A similar but crucially different case is relied upon by the defendant to argue that a prejudicial impropriety occurred. In *Grades v. Boles* (4th Cir. 1968), 398 Fed. 2d 409, the defendant was extensively interrogated and was taken before the district attorney, who told him that he would be tried on only one count if he confessed to others. The court of appeals held that the resulting confession was inadmissible because the defendant had not been represented by an attorney. In *Grades*, however, the defendant had never been informed

of his right to counsel. In the instant case, the defendant was repeatedly given the full *Miranda* warnings by each of the teams of detectives and by the district attorney. It is conceded that the defendant knowledgeably and voluntarily waived his right to counsel after being fully informed of the extent of that right.

While we conclude that the defendant's motion to suppress the confession herein was properly denied, *Grades v. Boles, supra,* points out that confession bargaining between a prosecutor and a defendant should be looked upon with suspicion and should be carefully scrutinized. On the other hand, this state has recognized plea bargaining as a legitimate technique in expediting criminal prosecutions. *State ex rel. White v. Gray* (1973), 57 Wis. 2d 17, 20, 203 N. W. 2d 638; *Armstrong v. State* (1972), 55 Wis. 2d 282, 198 N. W. 2d 357. The United States Supreme Court has also approved plea bargaining. *North Carolina v. Alford* (1970), 400 U. S. 25, 91 Sup. Ct. 160, 27 L. Ed. 2d 162.

Plea bargaining has its critics, and the practice may be subjected to abuse and can tend to subvert the ends of justice rather than to advance them. Nevertheless, plea bargaining, as contrasted to confession bargaining herein, contains safeguards which tend to make it more consonant with the ends of justice. In the plea bargaining situation, the trial judge can determine by a colloquy with the defendant that the plea is knowledgeable and voluntary. In the plea bargaining situation, the judge is in a position to see to it that the defendant is represented by counsel or can determine that the waiver of counsel is made under constitutionally permissible circumstances. Nevertheless, we think it inappropriate to lay down a rule that forbids the prosecutor from discussing the disposition of charges with a defendant who manifestly prefers to negotiate on his own behalf. The confession bargain will be subjected to severe *post hoc* scrutiny.

While, as we have pointed out, a promise of leniency does not in itself evince involuntariness, it is a factor which may be considered in making that determination. Moreover, where it is claimed that an unrepresented defendant made a confession, the state has the difficult burden of showing voluntariness. *Miranda v. Arizona* (1966), 384 U. S. 436, 475, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694. Moreover, when the confession is challenged by a motion to suppress, under Wisconsin law voluntariness must be proved beyond a reasonable doubt. *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 264, 133 N. W. 2d 753; *Sharlow v. State* (1970), 47 Wis. 2d 259, 265, 177 N. W. 2d 88. It would appear that these checks which trial courts and this court impose as conditions for the admission of the confession provide the defendant with substantial safeguards. In this case the state met its burden of proving that, beyond a reasonable doubt, the defendant voluntarily confessed to the crime charged and the other read-in crimes. The defendant initiated the negotiations to get the best possible deal for himself, and the state kept its bargain. We conclude that the motion to suppress the confession was properly denied and that the confession did not in any way contaminate the constitutionally proper procedure used in accepting the plea of guilty.

*By the Court.*—Judgments affirmed.