BROWN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 229.  Submitted under sec. (Rule) 251.54 June 5, 1974.— Decided June 28, 1974.*

(Also reported in 219 N. W. 2d 373.)

The cause was submitted for the plaintiff in error on the brief of *Patrick J. Devitt,* Legal Aid Society of Milwaukee, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *David J. Becker,* assistant attorney general.

HALLOWS, C. J.   The issue concerns the exclusion by the trial court of evidence offered by Brown on a motion to suppress evidence before trial. The evidence concerned his prior experience with the police and the advice given him by his former attorney on a number of occasions to remain silent and to refuse to answer questions in the absence of his attorney if he were arrested and questioned by the police regarding a crime.

Brown was originally charged with armed robbery, party to a crime, under secs. 943.32 (1) (b) and (2) and 939.05, Stats. He entered a plea of not guilty and moved to suppress all evidence obtained from him by the police after his arrest and in the absence of counsel on the ground his statements were involuntary. After a hearing on the motion, the court found the statements were

voluntarily made and admissible in evidence. Thereupon Brown negotiated the reduction of the armed robbery, party to a crime, charge to robbery, party to a crime, and pleaded guilty to the reduced charge. Although Brown pleaded guilty, he may raise the question of the denial of the court to suppress evidence on the appeal from his conviction.[1]

Brown was arrested at 11:40 a. m. on April 19, 1972, about a week after the date of the alleged crime. He was apprised of his *Miranda*[2] rights and elected to remain silent. While in the booking room in the city jail, he indicated to two detectives he was willing to make a statement. After again being advised of his *Miranda* rights, he made the statements in issue. Brown testified on the motion to suppress that when the questioning began, he told the detectives he wished to remain silent until after consulting his attorney. He claims he gave the business card of his attorney to the detective and indicated he wanted to see the attorney but the detectives failed to call the attorney. He also claimed he said nothing until the detectives informed him they would get a warrant to search the houses of his mother and that of his girl friend, at which point he agreed to answer the questions. He stated he gave a verbal statement to the detectives but he refused to sign a written statement prepared by the detectives. The detectives denied Brown at any time requested the presence of an attorney or gave them his attorney's business card or that they prepared a written statement for him to sign; or that they

[1] "971.31 **Motions before trial.** . . .

"(10) An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

[2] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

threatened to obtain a warrant to search his mother's and girl friend's houses. The important statements made during the interrogation by the police are that he planned the robbery of Marcellus Williams, the victim, with one Michael B. Boone; that he drove Boone and another Negro male to the vicinity of 2879 North 21st Street, Milwaukee, on April 13, 1972, that he gave a .38-caliber revolver to Boone and Boone and the other Negro left the car and returned shortly thereafter with a large amount of United States currency (the proceeds of the robbery), of which Brown took $2,100.

At the hearing Brown was asked by his attorney how many times he had been picked up and questioned by the police regarding criminal involvement; the objection to the question was sustained. Brown was asked whether he had been picked up and questioned at the detective bureau one and one-half weeks prior to his arrest in the instant case on a charge of possessing marijuana; an objection to this question was sustained. An offer of proof was made to the effect that a police officer was willing to testify that Brown had been picked up, questioned on the marijuana charge, but had successfully invoked his privilege against self-incrimination, refusing to answer any questions in the absence of his attorney. The objection to the offer of proof was sustained. Brown's former attorney was called as a witness and without objection stated that on prior occasions he had given Brown his business card. The attorney was then asked if he had instructed Brown not to answer questions propounded by the police and to call him immediately if he was picked up for questioning. An objection to the question was sustained on the ground of immateriality. An offer of proof was then made to the effect the attorney had so advised Brown on numerous occasions. Brown argues an inference can be drawn from the offered evidence that it is unlikely Brown would have voluntarily made the statements.

The trial court believed the police officers and ruled the statements made by Brown were admissible in evidence. Brown does not raise any question of credibility. He does not deny making the statements. He argues the sole question is of their voluntariness and therefore the excluded evidence must be tested in the light of its relationship and probative value to prove the voluntariness or involuntariness of the statements. Brown's theory is that because on prior occasions in his experience with the police he invoked his constitutional rights and did not talk shows that he would not have talked in the instant case had it not been for the threats of the police to search his mother's home and his girl friend's house. However, there seems to be an inconsistency, because even if Brown is not inclined to make statements to the police when interrogated concerning a possible crime, that inclination could be changed because of the threats. However, Brown does not stress the threats as inducing him to talk, and the police deny they made such threats; consequently, whether threats by the police were made is a question of credibility, which the trial court resolved in favor of the police.

Aside from this inconsistency in Brown's position, the question of whether a given confession is voluntary and not the result of coercion must be judged by examining all the facts surrounding the confession under the totality of the circumstances test. *State v. Wallace* (1973), 59 Wis. 2d 66, 207 N. W. 2d 855; *Pontow v. State* (1973), 58 Wis. 2d 135, 137, 138, 205 N. W. 2d 775; *State v. Hunt* (1972), 53 Wis. 2d 734, 740, 741, 193 N. W. 2d 858; *Krueger v. State* (1972), 53 Wis. 2d 345, 355, 192 N. W. 2d 880; *State v. Schneidewind* (1970), 47 Wis. 2d 110, 117, 176 N. W. 2d 303; *Phillips v. State* (1966), 29 Wis. 2d 521, 528, 529, 139 N. W. 2d 41; *State v. Hoyt* (1964), 21 Wis. 2d 284, 310, 124 N. W. 2d 47, 128 N. W. 2d 645; *Fikes v. Alabama* (1957), 352 U. S. 191, 197, 77 Sup. Ct. 281, 1 L. Ed. 2d 246; *Schneckloth v. Bustamonte* (1973),

412 U. S. 218, 93 Sup. Ct. 2041, 36 L. Ed. 2d 854. The essential consideration is whether the confession was coerced, *i.e.*, the product of improper pressures exercised by the police. To be admissible in evidence, a confession must be the voluntary product of a free and unconstrained will, reflecting deliberateness of choice. *Pontow v. State, supra,* page 137; *State v. Hunt, supra,* page 740; *State v. Hoyt, supra,* page 294; *Culombe v. Connecticut* (1961), 367 U. S. 568, 602, 81 Sup. Ct. 1860, 6 L. Ed. 2d 1037; *Schneckloth v. Bustamonte, supra,* page 225. As stated in *State v. Wallace, supra,* page 81:

"[W]hether a confession is voluntary 'under all of the circumstances' and therefore in conformance with constitutional standards and safeguards calls for a very careful balancing of the personal characteristics of the confessor with the pressures to which he was subjected in order to induce his statements."

The balancing formula was stated in a slightly different fashion in *State v. Hoyt, supra,* page 308:

"If a confession is to be the product of the free and unconstrained will of the defendant it is important that under the totality of circumstances in which the confession is obtained, the defendant is not the victim of a conspicuously unequal confrontation in which the pressures brought to bear on him by representatives of the state exceed the defendant's ability to resist."

In *State v. Schneidewind* (1970), 47 Wis. 2d 110, 117, 176 N. W. 2d 303, this court delineated a number of factors bearing on the determination of whether a confession might be termed voluntary under the "totality of the circumstances" test. It was there said:

". . . A court must examine such factors as the age of the accused, *Haley v. Ohio* (1948), 332 U. S. 596, 68 Sup. Ct. 302, 92 L. Ed. 224; the education and intelligence of the accused, *Townsend v. Sain* (1963), 372 U. S. 293, 83 Sup. Ct. 745, 9 L. Ed. 2d 770; the conditions under which the interrogation took place, *Fay v. Noia* (1963), 372

U. S. 391, 83 Sup. Ct. 822, 9 L. Ed. 2d 837; the physical and mental condition of the accused, *Blackburn v. Alabama* (1960), 361 U. S. 199, 80 Sup. Ct. 274, 4 L. Ed. 2d 242; and any inducements, methods and stratagems which were used to persuade the accused to confess, *Lynumn v. Illinois* (1963), 372 U. S. 528, 83 Sup. Ct. 917, 9 L. Ed. 2d 922; and what the responses were to his requests for counsel, *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. 2d 513."

In *State v. Wallace* (1973), 59 Wis. 2d 66, 81, 82, 207 N. W. 2d 855, the court further specified the factors relevant to a determination of the voluntariness question and, significantly, positioned these factors on either side of the balance "on the personal characteristics of the confessor, with the pressures to which he was subjected in order to induce his statements." The factors identified in *Schneckloth v. Bustamonte, supra,* page 226, and their respective position on the balance are as follows (quoting from *State v. Wallace*) :

". . . Bearing on the personal characteristics of the confessor, consideration should be given to his age, *Haley v. Ohio* (1948), 332 U. S. 596, 68 Sup. Ct. 302, 92 L. Ed. 224; *Gallegos v. Colorado* (1962), 370 U. S. 49, 82 Sup. Ct. 1209, 8 L. Ed. 2d 325; his education and intelligence, *Townsend v. Sain* (1963), 372 U. S. 293, 83 Sup. Ct. 745, 9 L. Ed. 2d 770; his physical and emotional condition at the time of the interrogation, *Greenwald v. Wisconsin* (1968), 390 U. S. 519, 88 Sup. Ct. 1152, 20 L. Ed. 2d 77; and his prior experience with the police, *Lynumn v. Illinois* (1963), 372 U. S. 528, 83 Sup. Ct. 917, 9 L. Ed. 2d 922; *Reck v. Pate* (1961), 367 U. S. 433, 81 Sup. Ct. 1541, 6 L. Ed. 2d 948.

"Those factors which, on the other hand, must be looked at to determine the amount of police pressure used to induce the confession include the length of interrogation, *Spano v. New York* (1959), 360 U. S. 315, 79 Sup. Ct. 1202, 3 L. Ed. 2d 1265, and delay in arraignment, *Reck v. Pate, supra,* and *Crooker v. California* (1958), 357 U. S. 433, 78 Sup. Ct. 1287, 2 L. Ed. 2d 1448; the general conditions under which the interrogation took

place, *Fay v. Noia* (1963), 372 U. S. 391, 83 Sup. Ct. 822, 9 L. Ed. 2d 837; any extreme psychological or physical pressure, *Brown v. Mississippi* (1936), 297 U. S. 278, 56 Sup. Ct. 461, 80 L. Ed. 682; *Chambers v. Florida* (1940), 309 U. S. 227, 60 Sup. Ct. 472, 84 L. Ed. 716, possible inducements, methods and stratagems which were used by the police, *Lynumn v. Illinois, supra;* whether the confessor was unlawfully arrested, *Culombe v. Connecticut* (1961), 367 U. S. 568, 81 Sup. Ct. 1860, 6 L. Ed. 2d 1037; and, of course, whether the confessor was apprised of his right to counsel and his privilege against self-incrimination. *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. 2d 513."

One of the factors identified in *Wallace* is "prior experience with police." This factor was identified in *Phillips v. State* (1966), 29 Wis. 2d 521, 529, 139 N. W. 2d 41, as bearing on the balance to be struck between the circumstances of police pressure and the power of resistance of the person confessing. It was there stated, citing *Stein v. New York* (1953), 346 U. S. 156, 185, 73 Sup. Ct. 1077, 97 L. Ed. 1522, that "[w]hat is overpowering to a weak mind or a first offender may be ineffectual against an experienced criminal." *Stein* echoed this sentiment and left little doubt but that the court regarded a defendant's prior contacts with police to be relevant in determining whether the defendant's will had been overborne and his capacity for self-determination critically impaired by the circumstances of police pressure. The clear implication of both *Stein* and *Phillips* is that if a defendant had had some prior experience with police, his power of resistance to police pressure might be assumed to be greater than the defendant who is inexperienced in the ways of crime or its detection. For other cases recognizing the relevance of a defendant's prior experience with police to the resolution of the question of whether that defendant's confession was voluntary and implying that one experienced in crime and the means of its detection might be regarded as having a greater

capacity for resistance to police pressure, *see People v. Hutchings* (1973), 31 Cal. App. 3d 16, 106 Cal. Rptr. 905, citing *People v. Lara* (1967), 67 Cal. 2d 365, 62 Cal. Rptr. 586, 432 Pac. 2d 202, certiorari denied, 392 U. S. 945, 88 Sup. Ct. 2303, 20 L. Ed. 2d 1407; *Commonwealth v. Murphy* (1971), 219 Pa. Super. 459, 281 Atl. 2d 685; *State v. Darst* (1965), 65 Wash. 2d 808, 399 Pac. 2d 618, citing *State v. Self* (1961), 59 Wash. 2d 62, 366 Pac. 2d 193; and *Lundberg v. Buchkoe* (6th Cir. 1964), 338 Fed. 2d 62. *See also: Clewis v. Texas* (1967), 386 U. S. 707, 712, 87 Sup. Ct. 1338, 18 L. Ed. 2d 423; *Reck v. Pate* (1961), 367 U. S. 433, 442, 81 Sup. Ct. 1541, 6 L. Ed. 2d 948; and *Lynumn v. Illinois* (1963), 372 U. S. 528, 534, 83 Sup. Ct. 917, 9 L. Ed. 2d 922.

While the evidence excluded may have some probative value, it can be no more than slight on the issue of voluntariness and if admissible at all, its exclusion would be harmless error because of weakness of the inference which might be drawn under the circumstances. However, we think the evidence was not of sufficient relevance or materiality to show that Brown's statements were involuntary and to require the trial court to admit it in evidence. In *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, we adopted Rule 303 of the American Law Institute, *Model Code of Evidence,* page 180, which is applicable to the facts in this case, and which gives the trial court discretion to exclude evidence of slight probative value.[3] Following *Whitty,* we stated in *Olson v. Hardware Dealers Mut. Fire Ins. Co.* (1970), 45 Wis. 2d

[3] In the Code of Evidence adopted by this court on January 1, 1974, it is provided:

"**904.03 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

569, 173 N. W. 2d 599, that in dealing with evidence of slight probative value, the trial court is given wide discretion. Likewise, sec. 274.37, Stats., provides that this court should not reverse or set aside or grant a new trial unless it appears the error complained of has affected the substantial rights of the party seeking reversal or the setting aside of the judgment or a new trial.

We think the errors complained of fall within the rule of *Whitty* and the trial court did not commit error in excluding the evidence on the motion to suppress in order to determine the voluntariness of the statements made by Brown. The statements being properly admitted in evidence, they served as a proper basis or motivation for Brown to plead guilty and his conviction should stand.

*By the Court.*—Judgment affirmed.