STATE of Wisconsin, Plaintiff-Respondent,†

v.

Rogers Lee MORDICA, Defendant-Appellant.

Court of Appeals

*No. 91–1877–CR. Submitted on briefs January 24, 1992.—Decided April 1, 1992.*

(Also reported in 484 N.W.2d 352.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert N. Meyeroff,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Stephen W. Kleinmaier,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. Rogers Lee Mordica appeals from a judgment of conviction for possession of heroin with intent to deliver, contrary to sec. 161.41(1m)(d)2, Stats., and a judgment of conviction for possession of cocaine with intent to deliver, contrary to sec. 161.41(1m)(c)2. The principal issue concerns limitations the trial court placed on Mordica's trial testimony which sought to explain why Mordica made certain incriminating statements to the police during the execution of a search warrant at his girlfriend's apartment. We hold that the trial court erred in refusing to allow Mordica to give his full explanation as to why he made the admissions. Because the excluded testimony traveled to the

heart of Mordica's theory of defense, we reverse the judgments of conviction and order a new trial.

The essential facts concerning the appellate issue are not in dispute. Mordica was arrested on March 27, 1989, during the execution of a search warrant on an apartment rented by Mordica's girlfriend, Carolyn McFadden Wright. The search warrant was based on the affidavit of Investigator Randal Kuzia of the Racine County Metro Drug Enforcement Unit. Investigator Kuzia's affidavit was, in turn, based on information given to him by a confidential informant who had participated in an earlier controlled purchase of drugs in Wright's apartment.

The confidential informant contacted Investigator Kuzia and told him that a "black male, whose name is not known" was selling cocaine out of the upper flat at 2036 Grand Avenue in the city of Racine and that the authorities could buy cocaine from him. Investigator Kuzia prepared the informant to participate in a controlled purchase of drugs from this apartment. After the sale was consummated, the informant turned over to Investigator Kuzia a package containing a substance which a field test indicated to be cocaine. The informant told Investigator Kuzia that the black male who sold him the cocaine was armed with a handgun during the sale transaction and that other persons frequenting the apartment were also armed.[1]

Investigator Kuzia applied for, and received, a "no knock" warrant to search the apartment on Grand Avenue. The search warrant was executed on March 27, 1989, shortly after 9:00 p.m. Using an agreed-upon ruse,

---

[1] It is not clear from the record whether these other individuals were present in the apartment when the informant made the controlled purchase, or whether this information was based on the informant's observations at other times.

the searching officers approached the door to the building on the ground level and knocked. A voice from the upstairs apartment called down from a window asking who was there and what was wanted. The officers called back that they were responding to a report of a domestic dispute at that address. The voice called down that there was no problem. The officers called up, asking if someone would please come down and open the door so that they could make sure everyone was all right.

Shortly thereafter, a man and a woman came down to the door and opened it to the officers. The officers handcuffed the man—Mordica—and the woman, who turned out to be an occupant of the downstairs apartment,[2] and took them outside and into the yard. While Mordica was being placed in handcuffs, Investigator Kuzia told him that the police were there to execute a search warrant for drugs, whereupon Mordica said, "[Y]ou got me, I have some stuff on the table up there." Investigator Kuzia said nothing more to Mordica, and stayed with Mordica while other officers entered and secured the upstairs apartment.

Mordica and the woman were subsequently taken to the upstairs apartment and advised of their constitutional rights. The police then began to search the apartment. During the search, Mordica sat in the living room with one of the officers. The woman was searched and allowed to return to the downstairs apartment. In one of the bedrooms, on a table, the searching officers found a gram scale, a plastic baggie containing a white powdery residue which tests later revealed to be cocaine, several aluminum bundles which contained a brown substance later found to be heroin, together with a baggie containing two more bindles containing heroin, a small plastic

[2]According to Mordica's trial testimony, Wright was running errands at the time of the search warrant's execution.

container later found to contain inositol, a substance commonly used to "stretch" cocaine, a spoon and a plate to which some residue clung. In the same room, officers also found a chair upon which a mirror had been placed. On the mirror were three piles of a crystaline substance later found to be cocaine, a sifter and a playing card.

After the search was completed, Investigator Kuzia asked Mordica for his name, his address, and the name of the apartment's occupant. Mordica identified himself and indicated that he was visiting from Waukegan, Illinois. Mordica then stated that the apartment was rented by Wright, that Wright knew nothing about the drugs in the apartment, and that the cocaine and heroin in the bedroom were his.

Mordica was charged with possession of heroin with intent to deliver and possession of cocaine with intent to deliver. A trial was had to a jury on November 26 through 28, 1990. During a recess near the end of the state's case, the trial court and counsel conferred concerning Mordica's anticipated testimony. Mordica's counsel stated that he planned to have Mordica testify as to his reasons for making the incriminating statements. Counsel explained that Mordica's theory of defense was that the drugs were not his but that he said they were his to protect Wright, who, according to Mordica, had one month of probation left to complete for a felony drug conviction at the time and stood to encounter certain revocation and severe punishment if convicted again of a drug-related offense.[3]

The state objected to Mordica's proffered testimony, arguing that the evidence would travel to Wright's character, would tend to show that she acted in conform-

---

[3]The record is not clear as to the exact nature of Wright's felony conviction. It appears that she was convicted of either delivery of cocaine or possession of cocaine with intent to deliver.

ity therewith, and thus was inadmissible "other acts" evidence under sec. 904.04(2), Stats. The state also contended that the evidence would raise a question in the jury's mind that the drugs were Wright's and not Mordica's.

Mordica countered that his theory of defense was *not* that the drugs were Wright's, but rather that the drugs were not his. He argued that he had "a right to explain why he said it . . . .. It's the end of the case if it's not explained."

Terming it a "very, very close question," the trial court agreed with the state's argument. The court, nevertheless, fashioned a ruling which attempted to accommodate both parties. The court ruled that Mordica would be allowed to testify that he incriminated himself to shield Wright from possible prosecution because he knew that she was on probation for *a felony* conviction. The court, however, refused to allow Mordica to testify that Wright's felony conviction was for a felony *drug* conviction because, although the information was relevant, such relevance was outweighed by its prejudicial effect to the state.

Mordica testified in keeping with the trial court's limitation. The jury found him guilty of both charges. Mordica appeals.

Mordica argues that the trial court erred by refusing to allow him to testify as to the *specific* nature of Wright's conviction. He argues, as he did below, that the excluded testimony was not offered to show Wright's prior acts or that she acted in conformity therewith. Instead, Mordica contends that the testimony was highly probative to his theory of defense and that the evidence did not carry any unfair prejudice to the state. Thus, Mordica contends that the evidence was relevant and should have been received.

601

■ The admission or exclusion of evidence is within the discretion of the trial court and its rulings in that regard will not be overturned on appeal absent an abuse of discretion. *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 139, 403 N.W.2d 747, 759 (1987). The term discretion contemplates a process of reasoning which depends on facts that are of record or reasonably derived by inference from the record and a conclusion based on a logical rationale founded on proper legal standards. *Christensen v. Economy Fire & Casualty Co.,* 77 Wis. 2d 50, 55–56, 252 N.W.2d 81, 84 (1977). The record should show that the discretion was in fact exercised and the basis of that exercise. *Id.* at 56, 252 N.W.2d at 84.

We first observe that the evidence here was not offered as "other acts" evidence. Mordica did not propose to testify that the drugs were Wright's. Rather, he sought to place before the jury an explanation of why he made his incriminating statements to Investigator Kuzia. In effect, Mordica sought to introduce evidence as to his state of mind which prompted his admissions.

We must acknowledge, however, that even though Mordica did not offer the evidence as "other acts," the state's and the trial court's concern that the jury might construe the evidence as such was legitimate. We conclude, however, that options available to the court, short of precluding the evidence, would have sufficiently addressed this concern.

■ Evidence may be relevant for one purpose, but not relevant for another. J. Strong, *McCormick on Evidence* sec. 59, at 235 (4th ed. 1992). In such a situation, the normal practice in case law is to admit the evidence and to protect the interest of the objecting party by

instructing the jury to consider the evidence only for the allowable purpose. *Id.* at 236.

In Wisconsin, trial courts routinely use limiting or cautionary instructions which advise a jury as to the proper manner in which certain evidence may be considered. *See, e.g.,* Wis J I—Criminal 275. Thus, the court here could have cautioned the jury that its consideration of Mordica's proposed testimony was to be limited to the very basis upon which it was offered—to explain why he made the incriminating statements and not to prove that Wright possessed the drugs.[4] And, if the evidence truly raised the specter of Wright's prior acts, the court could have delivered a modified version of the cautionary instruction set out at Wis J I—Criminal 275, addressing "other acts" evidence.[5]

---

[4]Here, the prospect of a cautionary instruction was not expressly considered by the parties or the trial court. One commentator suggests that the duty to ask for such an instruction lies with the party against whom the proposed testimony is offered: "The interest of the adversary is to be protected, not by an objection to its admission, but by a request at the time of the offer for an instruction that the jury is to consider the evidence only for the allowable purpose." J. Strong, *McCormick on Evidence* sec. 59, at 236 (4th ed. 1992) (footnote omitted).

Regardless, the state does not argue that Mordica has waived this issue because of his failure to expressly request a limiting instruction as to his own proffered testimony. Even if waiver were argued, we doubt that we would employ it against Mordica where his argument to the trial court in support of his testimony drew the very distinction which a cautionary instruction would have also encompassed.

[5]The standard instruction is built upon the assumption that the "other acts" pertain to the defendant. Here, the "other acts" pertained to a third party—Wright. Thus, the need to tailor the instruction.

Next, we turn to the trial court's weighing of the probative value of Mordica's proffered testimony against its prejudicial effect pursuant to sec. 904.03, Stats. This analysis lies at the heart of the trial court's ruling and Mordica's appeal.[6] The statute provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. [Emphasis added.]

The test for relevancy of proffered evidence is whether it tends to make less or more probable a significant fact in issue in the action. Section 904.01, Stats.; *State v. Sayles,* 124 Wis. 2d 593, 596-97, 370 N.W.2d 265, 267 (1985). Relevant evidence is "[a]ny evidence that assists in getting at the truth of the issue . . . even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable." *Oseman v. State,* 32 Wis. 2d 523, 526, 145 N.W.2d 766, 768-69 (1966) (emphasis omitted). Evidence which fairly prejudices the cause of the party against whom it is offered is relevant. *See Christensen,* 77 Wis. 2d at 61-62, 252 N.W.2d at 87.

The trial court acknowledged that "it's very relevant that [Mordica] knew [Wright] was on probation." We fully share this assessment. However, the court also con-

---

[6]The trial court's sec. 904.03, Stats., analysis was performed in the context of an "other acts" evidentiary question. Although we have concluded that the evidence, properly viewed, was not "other acts," an analysis under sec. 904.03 was nonetheless required. *See State v. Kuntz,* 160 Wis. 2d 722, 746, 467 N.W.2d 531, 540 (1991).

cluded that the probative value of the proffered testimony that Mordica knew Wright was on probation for a felony drug conviction was nonetheless outweighed by its prejudicial effect against the state under sec. 904.03, Stats.

The test under sec. 904.03, Stats., is not whether evidence is prejudicial but whether it is *unfairly* prejudicial. *Id.; Douglas v. Dewey,* 154 Wis. 2d 451, 469, 453 N.W.2d 500, 508 (Ct. App. 1990). " 'Unfair prejudice' does not mean damage to a party's cause, since such damage will always result from the introduction of evidence contrary to the party's contentions." *Christensen,* 77 Wis. 2d at 61-62, 252 N.W.2d at 87. Rather, unfair prejudice results where the proffered evidence, if introduced, would have a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case. *Lease Am. Corp. v. Insurance Co. of N. Am.,* 88 Wis. 2d 395, 401, 276 N.W.2d 767, 770 (1979). Stated more concisely, unfair prejudice means a tendency to influence the outcome by *improper* means. *Christensen,* 77 Wis. 2d at 61, 252 N.W.2d at 87.

Mordica's testimony, as tailored by the trial court, was clearly probative to Mordica's theory of defense. It follows then that the excluded portion of the testimony, which strengthened Mordica's theory of defense, was even more probative. In lockstep with this probative value came corresponding increasing prejudice to the state. This, however, augured for, not against, admission of the evidence. *See id.* at 61-62, 252 N.W.2d at 87.

The essence of the trial court's rationale was that Mordica's proposed testimony could not be received because it had a tendency to shift blame from himself to Wright. As we have already stated, Mordica's defense did not necessarily implicate Wright. More importantly, by using available tools to control any improper use of this evidence, the court could have avoided the risk of the jury shifting its focus to "something other than the established propositions in the case," *Lease America Corp.,* 88 Wis. 2d at 401, 276 N.W.2d at 770, and also avoided any "tendency to influence the outcome by *improper* means." *Christensen,* 77 Wis. 2d at 61, 252 N.W.2d at 87 (emphasis added). Thus, the disputed evidence was prejudicially *fair—not unfair—*against the state.

In an analogous situation where a defendant was precluded from explaining why he refused a chemical test, the supreme court held that the preclusion was error. *State v. Bolstad,* 124 Wis. 2d 576, 583, 370 N.W.2d 257, 261 (1985). The supreme court likened the defendant's refusal to submit to the chemical test to *an admission against interest—*the very situation in the case before us. *Id.* at 585, 370 N.W.2d at 262. In *Bolstad,* the court concluded that the corollary of the rule which entitled the state to introduce the evidentiary equivalent of a defendant's admission against interest was that "any evidence that tends to rebut or diminish the force of that permissible inference is also *relevant,* for it tends to make less probable the fact of intoxication—a fact of consequence in this action, and therefore, equally admissible." *Id.* at 585–86, 370 N.W.2d at 262 (emphasis added). Mordica's rejected evidence certainly qualified as tending "to rebut or diminish the force" of the inference

606

which any reasonable jury would draw from his admissions. As such, we conclude that the court's restriction of his evidence was prejudicial error.

■

In *Brown v. State,* 64 Wis. 2d 581, 219 N.W.2d 373 (1974), the supreme court observed that all the facts surrounding the giving of a confession must be examined in determining whether the confession was voluntary. *Id.* at 585, 219 N.W.2d at 376. We recognize that the issue in this case is not the voluntariness of Mordica's statements. We also recognize that in some situations, distinctions between confessions and admissions pertain.[7] However, we do not see the distinction as pertaining here and we see no reason why the *Brown* admonition should not apply to a defendant's admissions as well as confessions. Such evidence is highly incriminating and oftentimes is the prosecution's strongest weapon. We suspect this is precisely why the supreme court invites such complete scrutiny of the facts surrounding such evidence. Such total scrutiny did not occur here.

The trial court's ruling was no less error, as the state implies, because the court regardless allowed Mordica to testify that Wright was on probation for the commission of a felony. While the state does not expressly argue under the label of harmless error, this contention nonetheless has a harmless error ring. We address this argument in that vein.

In an opinion issued in conjunction with *Bolstad,* the supreme court in *Sayles* rejected a harmless error argument even in the face of strong evidence of guilt.

---

[7] When such distinctions must be made, a confession is generally described as a statement admitting or acknowledging all facts necessary for conviction of the crime at issue. An 'admission,' in contrast, consists of an admission or acknowledgment of one or more facts tending to prove guilt but not all of the facts necessary to do so. *McCormick on Evidence* sec. 144, at 551 (footnotes omitted).

*Sayles,* 124 Wis. 2d at 598, 370 N.W.2d at 268. There the court said, "To the extent that the defendant was denied even the opportunity to rebut the natural inference to be drawn from the refusal, the procedure was unfair and repugnant to our standards of justice." *Id.* In *Bolstad,* the supreme court described the error as "not trivial, but substantial." *Bolstad,* 124 Wis. 2d at 588, 370 N.W.2d at 263. "The ruling prevented the defendant from producing relevant evidence that would tend to negate an inference of guilt." *Id.*

Although Mordica was given "half a loaf" in this case, the result of the court's ruling was the same evil as that condemned in *Bolstad*—permitting evidence of consequence as to the only disputed issue to stand unchallenged where the defendant stands ready to offer an explanation. *See id.*

Even if we were to perform a harmless error analysis outside of the narrow constraints of *Bolstad* and *Sayles,* we would conclude that the error was not harmless. To be sure, the commission of a second offense while on probation is likely to bring about punishment. But this was not the full thrust of Mordica's theory. Rather, Mordica argued that he made his admissions "because he knew that a second time drug offender as opposed to simply a second time criminal offender would have been punished much more severely."

We cannot disagree with this logic. Wright's potential for punishment was clearly *greater* if she were linked to further activity with drugs. Thus, Mordica's explanation for his admissions became potentially more compelling and understandable. As the supreme court observed in *Sayles,* our function on appeal is not to determine whether the jury ultimately will accept the veracity of

such evidence. *See Sayles,* 124 Wis. 2d at 597, 370 N.W.2d at 268. Rather, our function is simply to pass on the question of the threshold admissibility of the evidence.

Just as the state was allowed to put in the full "unedited" version of Mordica's highly incriminatory statements, we conclude, under the facts of this case, that Mordica was entitled under the rules of evidence to offer a full "unedited" version as to why he made his admissions. The rules of evidence are to be "construed to secure fairness in administration, elimination of unjustifiable expense and delay . . . to the end that the truth may be ascertained and proceedings justly determined." Section 901.02, Stats.

We are well aware of our duty to appropriately defer to the discretionary rulings of the trial court on evidentiary matters. *See Gonzalez,* 137 Wis. 2d at 139, 403 N.W.2d at 759. Here, however, we conclude that the imbalance between the state's ability to put in Mordica's full admissions and Mordica's inability to fully rebut such evidence constitutes reversible error requiring a new trial.

Mordica raises a second argument which we need not address on the merits in light of our holding on the lead issue. We nonetheless briefly address this matter since the parties may revisit this issue upon remand.

Mordica contends that the trial court erred by failing to conduct an *in camera* at a pretrial motion which addressed the role and information of the confidential informant.[8] Mordica contends he sought the identity of

---

[8]The Honorable Jon B. Skow presided at this motion hearing.

the informant so that he could subpoena the informant to the trial.

The state argues that Mordica has waived this issue because he made his request pursuant to sec. 905.10(3)(c), Stats., the statutory subsection by which the reliability of an informant's information in support of a search warrant may be challenged. Instead, the state observes that Mordica should have brought his motion under sec. 905.10(3)(b), the statutory subsection by which a defendant may seek the identity of an informant and ultimately obtain the informant's testimony at trial.

Although the state's position as to the content of Mordica's motion is correct, we note that at the motion hearing Mordica did clarify that he was seeking the identity of the informant so that he could subpoena the informant to the trial.[9] Regardless, the court did not conduct an *in camera* inquiry and it does not appear that Mordica specifically asked the court to do so.

Since we have ordered a new trial in this case, Mordica will have the opportunity to renew this demand and to state it with the requisite clarity so that the trial court may know its corresponding duties under the applicable statutes.

*By the Court.*—Judgments reversed and cause remanded.

---

[9]We also note that Mordica made a discovery demand for identification of the informant.