188 N.J. Super. 127 (1983)
456 A.2d 125
STATE OF NEW JERSEY, PLAINTIFF,
v.
SAMUEL STARLING, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Union County.
Decided January 10, 1983.
*128 Eleanor Clark, Assistant Prosecutor for plaintiff.
Howard Sims for defendant.
MENZA, J.D.C. (temporarily assigned).
This is a motion to suppress a confession made by defendant. The question is whether a confession made in response to a promise made by an assistant prosecutor renders the confession involuntary, where the promise was in the first instance elicited by defendant. This is a case of first impression in New Jersey.
Defendant has confessed in 14 separate statements, each made immediately after the other, to the commission of 14 separate burglaries. The instant case involves the fifth confession in the chain of statements. The Miranda warnings were repeatedly given to defendant, commencing at the time he was taken into custody and thereafter before each of the written statements. The defendant signed 15 "waiver of rights" forms.
The State has presented evidence that defendant, while in police custody, asked to see an assistant prosecutor in order to talk to him about various crimes of which defendant claimed to have knowledge. An assistant prosecutor was called to the police department and engaged in a conversation with defendant. Defendant had already made two statements regarding two burglaries prior to speaking to the assistant prosecutor. *129 During the course of the conversation defendant asked the assistant prosecutor for an agreement to limit his term of imprisonment to a maximum of five years. He also asked him to assist regarding a possible parole violation. The assistant prosecutor refused defendant's request and made a counter-offer, which was accepted by defendant and reduced to writing per his request.[1]
Defendant denies the State's version of the incident and contends that it was the police and not he who suggested that a deal be made and a prosecutor called. He concedes, however, that he did make a deal with the assistant prosecutor but asserts that it was an unfair one and that the effect of the promises made to him was to mentally coerce him into a confession, thereby rendering the confession an involuntary one.
There is little doubt that it was defendant who first expressed the desire to "make a deal," and that it was he who asked for an assistant prosecutor. The proofs demonstrate that shortly before the assistant prosecutor responded to police headquarters defendant had realized that the police knew that his alibi regarding the most recent of the burglaries was untrue; that his dwelling had already been searched for guns and jewelry and that two other suspects had pointed a finger at him as the *130 perpetrator of the crimes. It was, therefore, crystal clear to him that he was the prime suspect in the series of burglaries. This, coupled with his prior involvement with the criminal justice system, indicates that defendant was ready, willing and, for that matter, most anxious, to make a deal regarding the disposition of his case.
A long line of New Jersey and federal cases have addressed the question of whether statements of a defendant induced by promise of benefit or reward are involuntary. As far back as 1898 the court, in the case of Roesel v. State, 62 N.J.L. 216 (E. & A. 1898), quoting from an even older case, Commonwealth v. Morey, 1 Gray 462, stated:
The ground on which confessions made by a party accused under promises of favor or threats of injury are excluded as incompetent, is not because any wrong is done to the accused in using them, but because he may be induced by the pressure of hope or fear to admit facts unfavorable to him without regard to their truth, in order to obtain the promised relief or avoid the threatened danger, and therefore admissions so obtained have no just and legitimate tendency to prove the facts admitted. [at 226-227]
A solid line of New Jersey cases have followed and solidified that proposition. See Bullock v. State, 65 N.J.L. 557, 565-566, 47 A. 62 (E. & A. 1900); State v. Beard, 16 N.J. 50, 57 (1954). Similarly, the United States Supreme Court in the early case of Bram v. United States, 168 U.S. 532, 542, 18 S.Ct. 183, 186, 42 L.Ed. 568 (1897), stated that a voluntary confession is one "not ... obtained by any direct or implied promises however slight." Other United States Supreme Court cases have reiterated that proposition. See Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (if defendant confessed, the police would recommend leniency and would assist her with her welfare payment and with the custody of her children); Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (where the police implied that if defendant confessed, they would not take his wife into custody).
In this case defendant contends that the law clearly stands for the proposition that a statement given by a defendant as a result of promises having been made to him is automatically an *131 involuntary statement; that the promises are in themselves coercive because by implication they have the effect of warping the defendant's reasoning process and adversely affecting his free and rational choice. Defendant further contends that even if the promises themselves, standing alone, are not coercive, the promises along with the other circumstances of this case show unequivocally that the statement was the result of coercion.
The proposition that a confession which results from a promise is automatically involuntary because it is coercive is thoroughly simplistic and an entirely incorrect recitation of the law. The mere fact that promises are made to a defendant does not in itself render the statement involuntary. It depends on the circumstances. For example, in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the United States Supreme Court commenting on the facts of the Bram case in which the defendant had been interrogated in a foreign country, without benefit of counsel and in the nude, stated:

In such circumstances, even a mild promise of leniency has deemed sufficient to bar the confession, not because the promise was an illegal act as such, too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess. [at 754, 90 S.Ct. at 1472; emphasis supplied]
Although Brady has often been misquoted in support of the proposition that any promise will make a confession involuntary, it is clear that the case holds simply that the voluntariness of a confession depends on the circumstance of a particular case.
In United States v. Arcediano, 371 F. Supp. 457 (D.N.J. 1974), the court set forth the law as follows:
The Bram opinion cites with approval the statement in an English textbook that a confession is not voluntary if "obtained by any direct or implied promises, however slight." That language has never been applied with the wooden literalness urged upon us by appellant. The Supreme Court has consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of "law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined ..."
........
[T]hus [I] find that the defendant's confession was not rendered involuntary by any promises made to him. Indeed, the instant facts make this an a fortiori *132 case, since it was the defendant who offered information, conditioning it upon being assured the agents would endeavor to get him placed in federal custody. [at 469]
In Pontow v. State, 58 Wis.2d 135, 205 N.W.2d 775 (Sup.Ct. 1973), the court stated:
While, as we have pointed out, a promise of leniency does not in itself evince involuntariness, it is a factor which may be considered in making that determination. [58 Wis.2d at 143, 205 N.W.2d at 779; emphasis supplied]
In the case of State v. Cydzik, 60 Wis.2d 683, 211 N.W.2d 421 (1973), another Wisconsin case, the court stated:
Such statement [that defendant's cooperation would help him] by a law enforcement officer falls far short of creating the "compelling pressures which work to undermine the individuals' will to resist and to compel him to speak where he would not otherwise do so freely." Even a promise of leniency would not standing alone do that. Whether such statements by the defendant are voluntary or the result of coercion depends upon the "totality of the circumstances." [60 Wis.2d at 692, 211 N.W.2d at 427; emphasis supplied]
In United States v. Silby, 535 F. Supp. 208 (E.D.Pa. 1982), a case in which the defendant contended that the government's conduct induced him to believe that he would not be prosecuted in exchange for a full and complete statement, the court reiterated the totality of the circumstances standard, stating:
It is well settled that in testing the voluntariness of a statement, the court must determine whether the government's behavior was such as to overbear the defendant's will to resist and therefore bring about a statement not freely self-determined. [citations omitted] In making such a determination, the court must consider the entire set of circumstances resulting in the inculpatory statements. [at 210; citations omitted]
Other jurisdictions have reached similar results. See United States v. Glasgow, 451 F.2d 557 (9 Cir.1971) (where the interrogating officer represented to defendant that he would inform the court and the prosecuting authorities if defendant cooperated with the government in its investigation); Taylor v. Commonwealth, 461 S.W.2d 920 (Ky. 1970), cert. den. 404 U.S. 837, 92 S.Ct. 126, 30 L.Ed.2d 70 (1971) (confessions of defendants were made as part of a deal in which certain felony charges pending against them in another State were dismissed, where the initial proposal for the deal came from defendants); People v. York, 189 Colo. 16, 537 P.2d 294 (1975) (where promise of leniency was *133 made by interrogating officer); State v. Anderson, 298 N.W.2d 63 (Minn. 1980) (where defendant raised the issue of making a written statement if his woman friend was released).
The law is clear. Promises alone do not vitiate the voluntariness of a confession. Voluntariness depends upon all of the circumstances of a particular case. In this case, it is clear that defendant's statement is a voluntary one.
The evidence shows that defendant was repeatedly advised of his constitutional rights, that he understood his rights and that he knowingly and intelligently waived those rights. There is no evidence to indicate that he was either physically or mentally abused. Indeed, the evidence indicates that he was treated rather well. The real basis for defendant's motion is because he feels wounded by the fact that, on reflection, he considers that he made a bad deal and now wishes to avoid his part of the bargain by asking the court to declare his statement involuntary. He fails to understand, however, that a bad deal does not make a statement involuntary. A statement is only involuntary if it is coerced and, thus, not a product of his free will. Such a conclusion cannot possibly be reached in this matter. It was not the police who coerced defendant  it was not they who, in seeking to get him to confess, reached out and held out favor to him in order to induce him to give a statement. It was defendant who, in effect, said "Let's make a deal," and the State responded to that offer by saying that it would. Defendant wishes to renege on the agreement that he initiated by claiming that it violates his constitutional rights.
Defendant has had prior experience with the criminal justice system, including arrests and convictions. He is obviously familiar with police procedure. He is far from being a "babe in the woods." The facts of this case demonstrate that defendant was attempting, in a cool, calculating, rational and controlled manner, to make the best possible deal that he could make for himself. He did not make the best deal. He made, I would think, a rather poor one. Nevertheless, he is bound by it and cannot now complain of it.
*134 The totality of the circumstances in this case show clearly that defendant's confession was a voluntary act and that the promises made to him, considering the circumstances in which they were made, were not coercive so as to render the confession involuntary.
Motion denied.
NOTES
[1] The writing is as follows:

I, Edmund Tucker, First Assistant Prosecutor, in return for the cooperation given to the Linden, Rahway, Roselle and Clark police by Sam Starling, in unveiling the manner in which numerous burglaries were committed, and as agreed upon between Mr. Starling and the undersigned, and in return for his cooperation the Prosecutor's Office has agreed not to ask the court for Mr. Starling to be treated as a persistent offender even though his prior record justifies such a request. The Prosecutor's Office further agrees not to ask the court for parole disqualifier even though it could. Mr. Starling understands that this does not mean that there will be no parole disqualifier as the court may impose a parole disqualifier as a condition of sentence if found guilty. This is an agreement based on Mr. Starling's cooperating in solving the burglaries involved and based on his statement that no weapons or acts of violence were committed.
 Signed: Edmund Tucker