261 N.J. Super. 151 (1992)
618 A.2d 358
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KENNY WATFORD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1992.
Decided December 16, 1992.
*152 Before Judges HAVEY, STERN and BROCHIN.
M. Virginia Barta, Assistant Deputy Public Defender, argued the cause for appellant (Zulima V. Farber, Public Defender of New Jersey, attorney; M. Virginia Barta, of counsel and on the brief).
Catherine A. Foddai, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Catherine A. Foddai, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
*153 After defendant's "motion to suppress" his confession was denied, he was tried without a jury and found guilty of conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12-1b(1); aggravated assault, N.J.S.A. 2C:12-1b(1); possession of a handgun with a purpose of using it unlawfully against the person of another, N.J.S.A. 2C:39-4a; possession of a knife with a purpose of using it unlawfully against another, N.J.S.A. 2C:39-4d; and unlawful possession of a handgun, N.J.S.A. 2C:39-5b. Defendant was sentenced to seven years in the custody of the Commissioner of Corrections for aggravated assault, N.J.S.A. 2C:12-1b(1), and to a consecutive seven year term with three years of parole ineligibility for the "Graves Act" possession for unlawful purpose offense, N.J.S.A. 2C:39-4a. Concurrent sentences were imposed on the other convictions.
On this appeal defendant argues, among other things, that:

Point I  Defendant's convictions must be reversed because his confession, which resulted from the assistant prosecutor's impermissible plea bargaining with an uncounselled defendant and his promise of specific sentences for defendant and his brother, was involuntary.
We conclude that, as a matter of State law, any statement given in exchange for a prosecutor's promise of sentence during uncounselled plea negotiations on an indictable offense is inadmissible. Hence, we reverse the judgment of conviction and remand for a new trial.
The evidence at trial revealed that defendant and his brother assaulted Roland Lee, who had a romantic relationship with defendant's ex-girlfriend. Defendant stabbed the victim three times. In order to understand the principal issue before us, however, we must detail only the essential facts developed at the motion to suppress (more properly considered an Evid.R. 8(3) hearing, State v. Robinson, 224 N.J. Super. 495, 540 A.2d 1313 (App.Div. 1988)).
After defendant's arrest, he gave a taped confession in which he admitted stabbing Lee. Defendant stated that when he *154 went home after the first confrontation with Lee, he obtained the knife used in the stabbing, as well as a .38 caliber handgun. The gun was not observed by the victim and was never found by the police. Defendant also confessed to an unrelated series of car thefts and armed robberies.
Detective Anthony Crokus, the arresting officer, testified that at headquarters defendant was read and waived his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but was initially reluctant to give any information necessary to process the arrest. However, at some point defendant asked Crokus if he could make a deal to help his brother. Crokus relayed defendant's inquiry to Detective Everingham, who in turn called the First Assistant Cumberland County Prosecutor.
The prosecutor arrived at headquarters and commenced plea discussions with defendant concerning the stabbing and weapons possession charges, as well as the unrelated crimes. The prosecutor promised defendant a package deal of "20 years, must do 7 years without parole" if defendant "cooperated truthfully." He also promised defendant that his brother would receive the minimum mandatory of three years under the "Graves Act." After the Miranda rights were readministered, defendant confessed to the crimes after the prosecutor left.
In his testimony the prosecutor acknowledged that his purpose in going to headquarters was "to go down there and cut a deal with [defendant] at that point." The prosecutor testified:
The agreement was that if he cooperated truthfully, and I explained to him that truthfully meant that he wouldn't implicate anybody that wasn't involved in the crime, that he wouldn't take out or exculpate someone who was involved, and that he didn't, and that he would tell the actual roles of the players in the crimes, that as long as he wasn't involved in a murder, for every crime that he told us about truthfully, he would get 1 sentence; in other words, for the armed robbery, he would receive 20 years, must do 7 years without parole, and that for every other additional crime that he was involved in, that he would receive a concurrent sentence.

....
I also told him, I explained to him what the Graves Act was and I explained to him when you commit a crime with a gun or your accomplice is involved in using a gun, that you know about that, your sentence has to include at least a third without parole. (emphasis added).
*155 The prosecutor also testified that defendant told him "if it wasn't for me, my brother wouldn't have been involved [in the stabbing]," and "I'm more concerned about the amount of time my brother has to do than what I have to do." In response, the prosecutor told defendant:
[E]ven if you got [your brother] involved in [the aggravated assault], as long as he knew there was a gun involved, he'd be subject to the Graves Act and would have to get at least 3 years without parole.
The prosecutor also testified:
I said that if his brother cooperated fully, the same conditions: that I would give his brother the minimum allowed by law, which was 3 years without parole, and I also told him that if the police or I suspected that he wasn't being fully candid, that he would agree to take a polygraph test, and I said that he would of course  this would be in return after cooperation for a guilty plea to the various crimes involved. (emphasis added).
According to defendant, the First Assistant Prosecutor was called to police headquarters when defendant would not cooperate, and advised him "not to get [his] own attorney"; said that "he would appoint [defendant] a public defender"; that "he had control over the judge and counsel"; and threatened that "he would see to it" that his brother, a teacher, "never taught in the State of New Jersey." Defendant further testified that the prosecutor never explained or answered his questions regarding what an attorney would do for him, but said that, between defendant and his brother, "he had to get 10 years out of us"; that "I would serve 7 years and my brother would serve 3"; and that "he would see to it that we were kept together the entire time that both of us were serving time." According to defendant, the prosecutor also made clear that, if defendant did not cooperate, "he would see to it that me and my brother each serve a minimum of 25 years each before we were eligible for parole" and that "the judge would agree because he was a prosecutor." After speaking with the prosecutor for "a minimum of an hour," he decided to give a statement to the detectives because "my future was in his hands ... and my brother's, too."[1]
*156 In finding the statement admissible, the motion judge rejected defendant's argument that the confession was involuntary because it was induced by impermissible, uncounselled plea negotiations and promises of leniency by the prosecutor. Citing State v. Starling, 188 N.J. Super. 127, 456 A.2d 125 (Law Div. 1983), aff'd o.b., 207 N.J. Super. 79, 504 A.2d 18 (App.Div. 1985), certif. denied, 103 N.J. 481, 511 A.2d 658 (1986), the judge rejected the per se rule that a confession induced by a promise is involuntary, reasoning that a promise of leniency is only one factor to be considered in light of the totality of the circumstances when determining whether a statement was given voluntarily. Relying on Starling, supra, the judge concluded that here the confession was voluntary in the totality of circumstances.
Defendant argues that his confession was coerced by the First Assistant Prosecutor's promise that defendant and his brother would receive specific sentences if defendant cooperated and confessed. Defendant asserts that the prosecutor's "promise" rendered his confession involuntary in violation of both the Fifth and Fourteenth Amendments to the United States Constitution. In support of his argument, defendant cites Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 186-87, 42 L.Ed. 568, 573 (1897), in which the United States Supreme Court endorsed the view that for a confession to be voluntary, it must not have been "`extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight.'" But as Judge Havey develops in his concurring opinion, the per se rule in Bram does not state the present federal constitutional standard for determining the voluntariness of a confession. Arizona v. Fulminante, 499 U.S. ___, ___, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302, 315 (1991). See also State v. Di Frisco, 118 N.J. 253, 257-58, 571 A.2d 914 (1990). We therefore reject defendant's per se argument advanced as a matter of federal constitutional law.
We need not decide if there was sufficient credible evidence to sustain the trial judge's legal conclusion that the confession was not involuntary under federal constitutional principles, see *157 and compare, e.g., Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); State v. Godfrey, 131 N.J. Super. 168, 174-75, 329 A.2d 75 (App.Div. 1974), aff'd o.b., 67 N.J. 267, 337 A.2d 371 (1975), because recognized State values require implementation of "bright line" principles in order to enhance fundamental fairness and predictability of criminal practice.
Here, incident to the discussion the prosecutor told defendant the sentence he "would receive" and the sentence the prosecutor "would give" his brother. However, our Rules of Court expressly detail prosecutorial authority with respect to plea bargaining, R. 3:9-3, and authorize neither such promises nor binding sentence recommendations. See e.g., State v. Warren, 115 N.J. 433, 558 A.2d 1312 (1989); State v. Spinks, 66 N.J. 568, 334 A.2d 23 (1975); R. 3:9-3(e).[2] This case involves neither a discussion about what the prosecutor would recommend, by way of sentence or otherwise, to a judge incident to a plea, or how the prosecutor would exercise his own jurisdiction in the filing of charges, if defendant cooperated in the investigation.[3] Rather, this case involves a statement made on the basis of a *158 promise of a specific sentence which the prosecutor could not guarantee. In any event, while in this case the judge ultimately imposed the sentence which the prosecutor promised, we do not believe that the voluntariness of a statement when given should turn on whether the trial judge subsequently follows a prosecutor's sentence recommendation. Given the Judiciary's responsibility for sentencing and our State's firm policy concerning the impact of a sentence recommendation by the prosecutor, we adopt a "bright line" approach to the admissibility against a defendant of a statement made in exchange for a sentence recommendation by the prosecutor, and hold such statements inadmissible in the absence of counsel on an indictable charge.
In a recent decision our Supreme Court, after noting "that the Sixth Amendment is more demanding than the Fifth Amendment," held that our State Constitution, N.J. Const. art. I, ¶ 10, gives more protection to a defendant, at least after indictment, than does the Sixth Amendment's right to counsel. See State v. Sanchez, 129 N.J. 261, 273, 609 A.2d 400 (1992).[4]Sanchez held inadmissible a post-indictment confession made, even though with waiver of Miranda rights, in the absence of counsel. While the pre-indictment, post-indictment distinction may be significant in other contexts, it is insignificant in the context of such communications incident to plea negotiations which must be culminated, with counsel or after express waiver thereof, before the Superior Court. See e.g., Sanchez, supra, 129 N.J. at 277, 609 A.2d 400, (referring to the need for counsel with respect to plea negotiations); State v. Crisafi, 128 N.J. 499, 509, 608 A.2d 317 (1992) ("[i]t is for the court to determine whether an accused has knowingly and intelligently waived" his right to counsel in criminal prosecutions); see also State v. *159 Ciba-Geigy Corp., 247 N.J. Super. 314, 320-21, 589 A.2d 180 (App.Div. 1991), app. dis. 130 N.J. 585, 617 A.2d 1213 (1992). The policies which require counsel at the taking of a post-indictment statement also require counsel whenever the prosecutor negotiates with a defendant to elicit a statement in exchange for a sentence recommendation on an indictable offense. An uncounselled statement made as part of negotiations relating to the proper sentence upon disposition of the criminal charges should not be admitted against the defendant if the case is not disposed of by plea. Cf. State v. Boyle, 198 N.J. Super. 64, 486 A.2d 852 (App.Div. 1984); see also State v. Boone, 66 N.J. 38, 327 A.2d 661 (1974); Evid.R. 52(2); R. 3:9-2 (if plea is refused, no statement is admissible at trial). And note N.J.R.E. 410 effective July 1, 1993.[5] We thus hold that an uncounselled statement made incident to, or in exchange for, a sentence recommendation or sentence promise by the prosecutor to the defendant on an indictable offense, is inadmissible.[6] Defendant's uncounselled admission in this case thus was inadmissible as a matter of State law.
This is not the occasion to examine the scope of the "harmless error" doctrine when a confession is admitted in violation of a State "bright line" rule. See, e.g., and compare, Arizona v. Fulminante, supra, 499 U.S. at ___-___, ___-___, *160 111 S.Ct. at 1253-1254, 1257-1259, 113 L.Ed.2d at 317-322, 329-333; United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Macon, 57 N.J. 325, 273 A.2d 1 (1971). We so conclude because here the defendant's confession provided the direct proof on the handgun counts, and we cannot hold it had no impact on the judge's other findings. The State argues that because the proofs corroborated defendant's confession in other respects, there was sufficient evidence to uphold the handgun convictions. The State does not suggest, however, that there was sufficient evidence to sustain those convictions if defendant's confession is inadmissible. We therefore vacate the convictions for the handgun offenses under N.J.S.A. 2C:39-4a and N.J.S.A. 2C:39-5b and direct entry of a judgment of acquittal on those offenses. However, as we find defendant's waiver of jury trial unimpeachable,[7] we leave for initial resolution by the trial judge whether he can make new findings and conclusions on the trial record made, without consideration of defendant's confession, or whether a plenary new trial is warranted on the other counts.
The judgment of conviction is reversed and the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
HAVEY, J.A.D., concurring.
I concur with the majority that defendant's statement must be suppressed. However, I hesitate to join in adopting the majority's holding that "any statement given in exchange for a *161 prosecutor's promise of sentence during uncounselled plea negotiations on an indictable offense is inadmissible." Ante at 159, 618 A.2d at 362. In my view, we need not go as far as establishing such a bright-line rule. I would hold that on the specific facts before us, and in the totality of the circumstances, defendant's confession was not the "product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854, 862 (1973).
Defendant asserts that the first assistant prosecutor's "promise" rendered defendant's confession involuntary in violation of both the Fifth and Fourteenth Amendments to the United States Constitution. In support of his argument, defendant cites Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 186-87, 42 L.Ed. 568, 573 (1897), where the United States Supreme Court endorsed the view that for a confession to be voluntary, it must not have been "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight."
Under current federal precedent, the unqualified rule in Bram does not state the standard for determining the voluntariness of a confession. Arizona v. Fulminante, 499 U.S. ___, ___, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302, 315 (1991). Rather, to determine voluntariness, a court must consider the effect that the totality of the circumstances had upon the will of the defendant. Schneckloth, 412 U.S. at 233, 93 S.Ct. at 2050, 36 L.Ed.2d at 866; State v. Di Frisco, 118 N.J. 253, 257, 571 A.2d 914 (1990). The question is whether the confession is:
the product of an essentially free and unconstrained choice by its maker[.] If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.
[Schneckloth, 412 U.S. at 225-26, [93 S.Ct. at 2046-47,] 36 L.Ed.2d at 862 (quoting Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057-58 (1961)).]
Relevant factors comprising the totality of the circumstances test include "the defendant's age, education, intelligence, advice *162 concerning his constitutional rights, length of detention, and the nature of the questioning  specifically, whether the questioning was repeated and prolonged and whether it involved physical punishment or mental exhaustion." State v. Bey, 112 N.J. 123, 135, 548 A.2d 887 (1988); see also Schneckloth, 412 U.S. at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862; State v. Miller, 76 N.J. 392, 402, 388 A.2d 218 (1978). The inquiry is whether the investigator's "`statements were so manipulative or coercive that they deprived [defendant] of his ability to make an unconstrained, autonomous decision to confess.'" Di Frisco, 118 N.J. at 257, 571 A.2d 914 (alteration in original) (quoting Miller v. Fenton, 796 F.2d 598, 605 (3rd Cir.), cert. denied, 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986)). The State has the burden of proving that a statement was voluntary beyond a reasonable doubt. Miller, 76 N.J. at 404-05, 388 A.2d 218. Further, although we generally defer to a trial court's findings of fact, "the ultimate issue of `voluntariness' is a legal question" requiring an independent appellate determination. Fulminante, 499 U.S. at ___, 111 S.Ct. at 1252, 113 L.Ed.2d at 316 (quoting Miller v. Fenton, 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405, 411 (1985)); see also State v. Tassiello, 39 N.J. 282, 294, 188 A.2d 406 (1963).
Thus, despite the apparent per se rule suggested by Bram, the federal courts have recently treated promises as part of the totality of the circumstances in assessing the voluntariness of confessions. Fenton, 796 F.2d at 608. For example, in Green v. Scully, 850 F.2d 894, 901 (2d Cir.), cert. denied, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988), the Second Circuit observed that "the presence of a direct or implied promise of help or leniency alone has not barred the admission of a confession where the totality of the circumstances indicates it was the product of a free and independent decision." See also Fenton, 796 F.2d at 608 (Bram "has not been interpreted as a per se proscription against promises made during interrogation").
*163 Nevertheless, a close analysis of the federal cases reveals generally that the upheld confession was offered merely in defendant's hope of leniency, rather than in response to an expressed promise of leniency or a shorter jail term. For example, in Fenton, the detective's statement to defendant that he was not a criminal, but rather a mentally-ill individual needing psychiatric help, and the promise by the detective that he would "help" defendant was held not to have overborne defendant's will because there was no express promise defendant would not be prosecuted or that he could successfully avail himself of the insanity defense. 796 F.2d at 609. See also Miller, 76 N.J. at 404-05, 388 A.2d 218.
Similarly, in Green, a detective's promise of psychiatric help which held out the prospect of more lenient treatment was not, in the totality of the circumstances, sufficient to support suppression of the defendant's confession because nothing the detective said "could be construed as holding out the hope of leniency in the courts or a shorter sentence." 850 F.2d at 903. See also United States v. Shears, 762 F.2d 397, 403 (4th Cir.1985) (alleged promise of leniency was not supported by the record); Rachlin v. United States, 723 F.2d 1373, 1377-78 (8th Cir.1983) (agent's statement to defendant that it was in his best interest to cooperate was not a "promise"); United States v. Glasgow, 451 F.2d 557, 558 (9th Cir.1971) (officer's representation to defendant that he would inform trial court and prosecutor of defendant's cooperation does not render confession involuntary). Thus, the common thread in most of the federal cases is that "[g]eneral encouragement to cooperate is far different from specific promises of leniency." United States v. Pelton, 835 F.2d 1067, 1073 (4th Cir.1987), cert. denied, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). In contrast, the District Court in United States v. Shears, 614 F. Supp. 1096, 1100 (D.Md. 1985), after remand by the Circuit Court (762 F.2d 397), suppressed a confession given after federal agents promised defendant he would be released on bail and could plead to reduced charges. It reasoned:

*164 These promises constituted the principal and determinative factor motivating the defendant to give the statements now challenged. These assurances of lenient treatment, viewed in the totality of the circumstances, were improperly coercive and rendered the resulting statements involuntary.

[614 F. Supp. at 1100.]
Thus, the federal cases apparently focus, at least in part, on the clarity and certainty of the promise in determining whether, in the totality of the circumstances, the promise had the capacity to overbear the will of the defendant.
Whether a statement by the interrogating officer amounts to a promise must be viewed from the defendant's, not the prosecutor's perspective, applying a reasonableness standard. Grades v. Boles, 398 F.2d 409, 412 (4th Cir.1968); see also Ferguson v. Boyd, 566 F.2d 873, 876 (4th Cir.1977). Also, when considering what impact a promise had in overbearing the will of a suspect, courts must give qualitative, rather than quantitative weight to the promise. The court does not simply weigh each factor under Schneckloth against one another on a balance scale. Green, 850 F.2d at 902. Even a single factor "may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act." Ibid. Thus, when a defendant is in custody, alone and unrepresented by counsel,
even a mild promise of leniency [might be] deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess.
[Brady v. United States, 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 759 (1970).]
The trial court here relied on State v. Starling, 188 N.J. Super. 127, 133-34, 456 A.2d 125 (Law Div. 1983), aff'd o.b., 207 N.J. Super. 79, 504 A.2d 18 (App.Div. 1985), certif. denied, 103 N.J. 481, 511 A.2d 658 (1986), a Law Division case upholding a confession induced by an assistant prosecutor's promise. After waiving his Miranda rights, Starling asked to see an assistant prosecutor to discuss his knowledge regarding a series of crimes. He had already given two inculpatory statements *165 regarding burglaries prior to the prosecutor's arrival at the police station. The prosecutor refused defendant's request to limit his term of imprisonment for the series of burglaries to five years, and to have the prosecutor assist in a possible parole violation. Id. 188 N.J. Super. at 128-29, 456 A.2d 125. However, the prosecutor agreed not to move for an extended term under the persistent offender statute, nor to press for a parole ineligibility period. Id. at 129 n. 1, 456 A.2d 125. Defendant thereupon confessed to the crimes. The Law Division, applying the totality of the circumstances test, denied defendant's suppression motion, noting that defendant had waived his rights, initiated the plea discussions and was not physically or mentally abused during the interrogation. Id. at 133, 456 A.2d 125. It also observed that defendant had extensive prior experience in the criminal justice system and was "obviously familiar with police procedure." Id.
Examining the record here in the context of the totality of the circumstances, I would conclude that defendant's confession should have been suppressed. This case does not involve an idle comment by a detective causing a defendant to conclude, without an objectively reasonable basis, that the State was offering leniency in return for his cooperation. Rather, a first assistant prosecutor undertook wholesale plea negotiations with an uncounselled defendant immediately after his arrest.
According to defendant, Detective Everingham told him he had just called the "big man," after which the first assistant prosecutor arrived at police headquarters. The prosecutor acknowledged that his purpose in coming to headquarters was "to go down there and cut a deal with" defendant. After explaining the potential aggregate sentence defendant faced for all the crimes, as well as Graves Act implications, the prosecutor told defendant in no uncertain terms that defendant "would get" a maximum of twenty years with a seven-year mandatory minimum term if he cooperated.
*166 When defendant told the prosecutor "I'm more concerned about the amount of time my brother has to do than what I have to do," the prosecutor promised he "would get" Kelvin the minimum sentence under the Graves Act. The prosecutor made these statements despite the fact he knew the trial court would not be bound by such promises, and that if the court rejected the plea, defendant would face trial on all of the charges, during which his confession would no doubt be admissible against him. See State v. Boyle, 198 N.J. Super. 64, 70-72, 486 A.2d 852 (App.Div. 1984); cf. State v. Boone, 66 N.J. 38, 45-46, 327 A.2d 661 (1974) (a withdrawn plea of guilty is not admissible in evidence in a subsequent criminal proceeding). This factor alone distinguishes this case from Starling, where the assistant prosecutor made clear that his promise not to ask for a parole ineligibility period "does not mean that there will be no parole disqualifier as the court may impose a parole disqualifier as a condition of sentence if found guilty." 188 N.J. Super. at 129 n. 1, 456 A.2d 125.
Moreover, unlike the federal cases, here the prosecutor did not simply imply that defendant's cooperation would benefit defendant and Kelvin in the ultimate prosecution of the crimes. The deal struck by the prosecutor, objectively viewed, was absolute, and intended to induce defendant into cooperating and giving a confession. Further, there is little question that the prosecutor's promises and explanation of the potential exposure defendant and Kelvin faced were the principal and singular factors that induced defendant to confess. This is particularly true with respect to the promise concerning Kelvin's sentence, in view of defendant's paramount concern about the potential penal consequences to Kelvin.
There is another factor implicated here which, in my view, is part of the totality of the circumstances analysis. A first assistant prosecutor, not a police detective, conducted this plea negotiation. I believe that a clear capacity to overbear the will of a suspect exists when the second most powerful figure in the prosecutor's office packages a deal during negotiations with a *167 recently-arrested defendant, particularly when the prosecutor conveys the message in no uncertain terms that he has complete authority to consummate the deal as negotiated. The prosecutor's authority here was obviously significant to defendant. After the prosecutor explained the potential aggregate sentence defendant faced for all the crimes, defendant recognized he was exposed to an aggregate term far in excess of twenty years. The prosecutor stated "I'd be willing to give you 20 years, must do 7 on everything, does that sound reasonable?" Defendant, who had no prior record, testified, "I never knew anything about a plea bargain or deals. I never dealt with the system before." He was convinced that the prosecutor "had total control over [everything]" because the prosecutor had told him the judge would go along with the plea agreement "because I was a prosecutor." I have little doubt that the aura of the prosecutor's position and the certainty of his expressed authority influenced defendant to a material degree.
There is an obvious imbalance when a prosecutor, trained in the law, conducts unrestrained plea negotiations with an uncounselled suspect. Plea bargaining, of course, "has become firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of criminal justice." State v. Taylor, 80 N.J. 353, 360-61, 403 A.2d 889 (1979); see also State v. Barboza, 115 N.J. 415, 420, 558 A.2d 1303 (1989). However, the system "presuppose[s] fairness in securing agreement between an accused and a prosecutor." Santobello v. New York, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971). "`If plea bargaining is to fulfill its intended purpose, it must be conducted fairly on both sides and the results must not disappoint the reasonable expectations of either.'" State v. Warren, 115 N.J. 433, 443, 558 A.2d 1312 (1989) (quoting State v. Thomas, 61 N.J. 314, 321, 294 A.2d 57 (1972)). Accordingly, the "prosecutor and defense counsel may engage in discussions relating to pleas and sentences...." R. 3:9-3(a) (emphasis added). Moreover, our rules are designed to assure that a guilty plea entered *168 pursuant to a plea negotiation (1) contains a factual basis; (2) is voluntary; and (3) is given with the understanding of the nature of the charge and the consequences of the plea. R. 3:9-2; Barboza, 115 N.J. at 420-21, 558 A.2d 1303. The plea agreement, of course, cannot bind the trial judge to a particular sentence. R. 3:9-3(e); Warren, 115 N.J. at 441-42, 558 A.2d 1312.
Although this case concerns a motion to suppress a confession, rather than the withdrawal of a guilty plea, the obvious imbalance in the plea negotiation process between a legally-trained prosecutor and a newly-arrested defendant sheds all indicia of fairness. The uncounselled defendant may not know what defenses are available, the strength of the State's case or the possible consequences of a plea, when negotiating a sentence or plea with a prosecutor who has conveyed his certain authority to reach a binding agreement. In such a circumstance, the prosecutor holds all the cards. The result is a "species of plea bargaining shorn of any of the essential safeguards mandated for true plea bargaining." Grades, 398 F.2d at 413.
This regrettable imbalance was significant here. For example, the prosecutor advised defendant that he was faced with a Graves Act sentence when in fact there was a serious question as to whether a firearm had been involved in any of the crimes. Defendant was also told that his brother faced a Graves Act sentence, despite the absence of any convincing evidence that Kelvin was an accomplice who had the purpose to commit the crimes with the use of a firearm. See State v. White, 98 N.J. 122, 130, 484 A.2d 691 (1984). Indeed, Kelvin was never even charged with the Graves Act offense.[1] The prosecutor also did not advise defendant that his confession and plea to the Graves *169 Act offense would trigger an extended term if defendant was later convicted for the armed robberies to which he also confessed. See N.J.S.A. 2C:43-6c. In short, defendant accepted the prosecutor's representations regarding potential sentencing consequences at face value, relied upon them and agreed to give a confession. In my view, the conclusion is inescapable that the unacceptable conditions of this procedure weighed heavily in overbearing defendant's will. I would therefore conclude that, in the totality of the circumstances, defendant's capacity for self-determination was "critically impaired." Schneckloth, 412 U.S. at 225-26, 93 S.Ct. at 2046-47, 36 L.Ed.2d at 862. Therefore, his confession was involuntary and should have been suppressed.
NOTES
[1] We note that defendant ultimately received an aggregate of 20 years with 5 years parole ineligibility for all offenses.
[2] There are special circumstances where the prosecutor can make a binding recommendation under a statute, but even then the prosecutor's recommendation can be subject to challenge before the judge. See e.g., State v. Vasquez, 129 N.J. 189, 609 A.2d 29 (1992); State v. Lagares, 127 N.J. 20, 601 A.2d 698 (1992); State v. Gonzalez, 254 N.J. Super. 300, 603 A.2d 516 (App.Div. 1992); State v. Alvarez, 246 N.J. Super. 137, 586 A.2d 1332 (App.Div. 1991). Because this case involves a "Graves" offense, see N.J.S.A. 2C:43-6c, and other charges, we are not dealing with a prosecutor's pre-indictment promise or decision about the charges he would or would not file.
[3] This case is quite different from State v. Starling, supra, where, in writing, the prosecutor in exchange for defendant's cooperation "agreed not to ask the court for Mr. Starling to be treated as a persistent offender [which requires the State's motion and proofs, see N.J.S.A. 2C:44-3a] even though his prior record justifies such a request." The written agreement further provided that "[t]he Prosecutor's Office further agrees not to ask the court for parole disqualifier even though it could. Mr. Starling understands that this does not mean that there will be no parole disqualifier as the court may impose a parole disqualifier as a condition of sentence if found guilty." 188 N.J. Super. at 129 n. 1, 456 A.2d 125. The defendant's statements following repeated waiver of rights, including the right to counsel, was found admissible.
[4] Justice Pollock pointed out in Sanchez that the United States Supreme Court held in Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), that waiver of the right to counsel post-indictment in response to Miranda warnings constituted a waiver of the Sixth as well as the Fifth Amendment right to counsel.
[5] Adoption of N.J.R.E. 410 would expand the "scope of the exclusion [and constitute] a change in current New Jersey practice" and might overrule State v. Boyle, supra. Report of the New Jersey Supreme Court Committee on the Rules of Evidence, comment to N.J.R.E. 410. While examining the issue of voluntariness, Boyle involved a defendant with counsel at the time of the plea discussions and did not examine the right to counsel issue. Further, it involved a defendant's unilateral decision to "abrogate a previously negotiated plea agreement." 198 N.J. Super. at 73, 486 A.2d 852. For present purposes, we note that Boyle may be read to permit the introduction of a voluntary statement made during plea negotiations where counsel was present.
[6] We do not intend to apply this holding to a prosecutor's promise to advise the judge of cooperation or to recommend leniency or to other promises which do not involve specific sentences.
[7] Defendant claims that the waiver of his right to jury trial was "conditional" because it was to assure an earlier trial date which did not materialize. He does not otherwise substantively or procedurally claim prejudice because he received a bench trial while his brother was simultaneously tried to a jury. We do not address the propriety of that procedure. Nor need we address the other issues raised by defendant.
[1] Kelvin was charged only with and convicted of conspiracy and aggravated assault arising from the stabbing. His conviction is the subject of a companion appeal. See State v. Watford, No. A-5523-90T4 (App.Div. 1992) (unreported). The opinion in that appeal is being filed contemporaneously with this opinion.