# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3662-17T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

CARLOS M. HERNANDEZ-ESCOBAR,

    Defendant-Respondent.

_____

> Argued September 26, 2018 – Decided  October 15, 2018
>
> Before Judges Koblitz and Ostrer.
>
> On appeal from an interlocutory order of Superior Court of New Jersey, Law Division, Hunterdon County, Indictment No. 17-10-0396.
>
> Jeffrey L. Weinstein, Assistant Prosecutor, argued the cause for appellant (Anthony P. Kearns, III, Hunterdon County Prosecutor, attorney; Jeffrey L. Weinstein, of counsel and on the brief).
>
> Steven A. Garner argued the cause for respondent.

PER CURIAM

On leave granted, the State appeals the trial court's March 12, 2018, order suppressing a portion of defendant's custodial statement. In the suppressed excerpt, defendant admitted that he touched the pre-teen sister of his wife inappropriately. He was later charged with second-degree sexual assault of a child under thirteen, N.J.S.A. 2C:14-2(b), and third-degree endangering the welfare of a child through sexual conduct, N.J.S.A. 2C:24-4(a)(1).[1] The court found that police misled defendant to believe "that he would not be deported, that the state would treat him leniently by allowing him to leave after the interview, and that he would receive help in the United States through counseling rather than incarceration." As a result, defendant's will was overborne, and his subsequent confession was involuntary and therefore inadmissible.

On appeal, the State contends the trial court erred, because the interrogating police officers made no false statements or promises that induced defendant to confess. We disagree and affirm, substantially for the reasons set forth in a cogent and comprehensive written opinion by Judge Angela F. Borkowski.

---

[1] Neither the complaint warrant nor indictment is included in the record on appeal. We rely on the State's recitation of the charges in its brief.

One of the three interrogating officers, Hunterdon County Prosecutor's Office Lieutenant Kristen Larsen, testified at the N.J.R.E. 104(c) hearing. Also introduced into evidence was a video recording of the interrogation, which was conducted in English and Spanish, and a transcript including a translation of the Spanish. Defendant speaks English, but Spanish is his first language, and he at times used the interpretation of a Spanish-speaking officer, Detective Vanessa Jimenez. She also served as a questioner.[2]

The critical comments by officers occurred after the second break in the questioning that, in all, lasted about two hours. Up to that point, defendant insisted that he did not remember inappropriately touching his sister-in-law. The third officer, a male, had left the room. After Jimenez told defendant that he had one last chance to "to be honest" with them, Larsen asked, through Jimenez, what he was "most afraid of." Defendant, a non-U.S. citizen from Guatemala, said he was afraid of deportation, and being separated from his wife and children. He mentioned a friend who "had issues with his wife, and he ended up getting deported."

---

[2] The State did not include the recording in the appendix on appeal. The English transcript does not indicate when Jimenez or defendant spoke in Spanish. We can only surmise that when Jimenez reiterated Larsen's statements, she did so in Spanish.

A-3662-17T1

Speaking without Jimenez's assistance, Larsen distanced herself from immigration enforcement, responding "I mean, just so you know, I'm not the deportation police. . . . I'm the detective police, in a way. All right? Not the deportation police. So I can['t] speak to that at all. Sorry, I can't."[3] She then tried to allay his fears, stating: "But I think what you're worried about are things that are not . . . I don't want to say that they're not in reality 'cause that's your reality, Ok?" She added, "But if what you're afraid of is those things, and that's why you're not telling us the truth, it's really hard to kind of understand this whole situation. . . . I understand if that's why it's holding you back from talking to us, from telling us what you remember. I understand that."

Jimenez then summarized very briefly, "She says that she understands that . . . we're not, uh . . . the deportation police." Jimenez then added, "We don't work for Immigration. We, simply, deal with cases that . . . are related to something sexual. . . . Um, we know that we can't always say what's going to happen. You know what I mean?" Acknowledging defendant's fear of deportation, Jimenez stated, "That's the fear that you have. But that's not something that we, uh . . . have, uh . . . here we're not looking to deport you or

---

[3] We presume "can" is an error, given the sentence that followed.

anything like that. Ok?" Defendant apparently stated, "Ok" in Spanish, because Jimenez translated his response.

Larsen then characterized deportation as the "worst case scenario."

> Ok. So . . . he understands that, Ok. And is that what's holding him back from telling us the truth? 'Cause if that's what, that's what I'm hearing. It's, I'm hearing he's afraid of all these things happening. He's like kind of thinking of the worst case scenario. And putting that in the way of being able to tell us what happened.

Jimenez then asked defendant, "Is that, is that the reason that you're not being honest with us?" Defendant responded affirmatively.

After Larsen reiterated that she was "not the immigration police," Jimenez tried to convince defendant his situation was different from his friend's. After first saying that the friend's case was "maybe . . . something totally different," which prompted defendant to draw similarities, Jimenez unqualifiedly stated, "But, like I'm telling you, they are totally different cases." Jimenez then told defendant that she did not want him to think about deportation because that was "the extreme" and she "d[id]n't want to go to the extreme."

Jimenez urged defendant to tell his side of the story, suggesting that he had made a mistake, or he was under the influence of alcohol. She stated that the officers did not want to have to report that defendant "doesn't remember." She again stated that defendant had a "last chance" to be honest. At that point,

defendant asked whether he was going to be incarcerated, "So I'm not going to leave free from here?"

Jimenez deflected, stating that defendant's admissions would "help" him. "We're not saying that. What we're saying is that in our interview, we want you to be honest with us. Because that will help you . . . in the future." After stating that the child would be viewed as a liar if defendant did not confess, Jimenez assured defendant that if he explained what happened, he could get help for his problem. "[T]ell us your side of the story. And, and, and to see why that happened. And maybe give you the help that you need. Because we know that in this country there are programs to help everybody. And if you, maybe, have a problem, uh . . . a sexual problem, or something that is uncontrollable, you could also get help for that." After Jimenez acknowledged defendant was a hard-working man, and asked him what he remembered, defendant admitted he touched the child inappropriately, and provided additional details in response to further questioning.

The court suppressed those admissions. Judge Borkowski comprehensively reviewed the governing principles of law. In sum, recognizing that the State bears the burden to prove beyond a reasonable doubt that defendant's statements were voluntary, see State v. Galloway, 133 N.J. 631, 654

6

(1993), the court appropriately considered the totality of the circumstances. See State v. Hreha, 217 N.J. 368, 383 (2014); Galloway, 133 N.J. at 654. In particular, the court weighed defendant's personal characteristics. See State v. Knight, 183 N.J. 449, 462-63 (2005). Those included that he was a twenty-nine-year-old immigrant from Guatemala with a limited education, whose primary language was Spanish, and who had no prior experience with the criminal justice system.

After carefully analyzing Jimenez's and Larsen's various representations in the aggregate, the court concluded "[T]he detective's implied representations that defendant would be able to go home, would not have to worry about being deported, and that he would be able to obtain counseling, taken together, misled the defendant." As for defendant's fear of deportation, the court acknowledged that the detectives truthfully informed defendant that they did not work for immigration. But, they also characterized deportation as a "worst case scenario"; told defendant that his friend's case was "totally different"; and stated that they did not "want to go to the extreme" of deportation. As in State v. Puryear, 441 N.J. Super. 280 (App. Div. 2015), the court here held that the

detective's assurance that confessing would help him directly contravened the Miranda[4] warning that anything he said could and would be used against him.

We deferentially review the trial court's findings on a motion to suppress, even when it bases them solely on a recording or documentary evidence. State v. S.S., 229 N.J. 360, 379-80 (2017). We review the court's fact-findings only to determine if they are supported by sufficient credible evidence in the record.[5] Id. at 381. However, we review de novo issues of law. Id. at 380. Applying that standard of review, we affirm substantially for the reasons stated in Judge Borkowski's thorough opinion. The record adequately supports the court's fact-findings, and we discern no error of law.

We briefly address the State's argument that the court erred because the detectives did not make a direct false statement or promise. The State contends the detectives accurately stated they did not enforce immigration law; they

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

[5] Notably, in this case, we could not, even if we so desired, review de novo the recording, as it was not included in the record before us. However, its omission also hampers our ability to perform our limited task to ascertain whether the record provides sufficient support for the court's findings. We are limited to a review of the cold transcript, which has been likened to a dehydrated piece of fruit, having "neither the substance nor the flavor" of the real thing. See State v. Locurto, 157 N.J. 463, 472 (1999).

A-3662-17T1

truthfully did not want to focus on the "extreme scenario";[6] and they never directly assured defendant he would not be deported. However, the detectives' statements were not to be viewed in a vacuum. The trial court properly considered the detectives' statements in light of the totality of circumstances. See Hreha, 217 N.J. at 383. The court properly considered the statements from defendant's point of view. "Whether a statement by the interrogating officer amounts to a promise must be viewed from the defendant's, not the [interrogator]'s perspective, applying a reasonableness standard." State v. Pillar, 359 N.J. Super. 249, 272 (App. Div. 2003) (quoting State v. Watford, 261 N.J. Super. 151, 163 (App. Div. 1992) (Havey, J., concurring)).

Although the detectives accurately stated they were not immigration officers, they affirmatively stated that defendant's case was substantively different from that of his friend who was deported, leading defendant to believe he would not suffer the same fate as his friend. The detectives stated they did not "want to go to the extreme" of deportation, as if they had some power over whether defendant would suffer that extreme consequence. Considering the context in which the detectives spoke, defendant could reasonably understand the detectives to assure him that he would not be deported. The record supports

---

[6] Actually, the detectives referred to the "worst case scenario."

A-3662-17T1

the court's conclusion that defendant's will was overborne by the detectives' immigration-related statements, along with the assurances that defendant would help himself and receive treatment if he confessed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION